JULIA SMITH GIBBONS, Circuit Judge,
dissenting.
Here are the undisputed facts: In 2007, Dura implemented a new substance-abuse *584 policy. Within the broad sweep of that policy came legal drugs, including lawfully prescribed medications and over-the-counter drugs. Dura reserved the right to enforce its policy via employee drug testing, and hired Freedom From Self (FFS), a third-party drug-testing company, to administer drug tests to its employees.
Dura employed a two-phased drug-testing protocol. First, FFS performed “instant panel” tests on urine samples collected from Dura employees. Based on the instant-panel test results, Mark Jent and Lindy Boots of Dura sent positive-testing employees home. Positive samples were sent for confirmatory testing and employees were afforded the opportunity to provide a medical review officer (MRO) with a medical explanation for the positive test results. If the MRO concluded that the employee had a valid medical justification, the MRO would change the final test result to negative, send the final result to FFS, and FFS would forward the final result to Dura.
Dura elected to disregard this policy. Instead of crediting the MRO’s revisions, Dura instructed positive-testing employees to bring their medications to FFS for documentation. FFS then reported each employee’s machine-restricted medications to Dura.
Were this the end of the story, I might agree with the majority that a fact question precluded judgment as a matter of law as to whether Dura’s drug tests were medical examinations or inquiries proscribed by 42 U.S.C. § 12112(d)(4)(A). But this is not the end of the story. It is also undisputed that FFS implemented a “blanket policy” of terminating employees who tested positive for medications carrying a machine-restriction warning. Some of the terminated employees provided Dura with doctor’s notes stating that the use of their prescription medication did not affect work performance. Dura, however, refused to allow these employees to return to work unless they discontinued their medications regardless of whether the medications had any real likelihood of affecting their ability to perform the job safely. That Dura categorically disregarded medical advice in such a manner is compelling evidence that its drug-testing program was designed to discover and then to discriminate against employees with health conditions.
My disagreement with the majority on this score is thus twofold. The majority takes a cramped view of the third EEOC guidance factor—whether a test is designed to reveal an impairment of physical or mental health. And in service of this cramped view, the majority fails to consider how the drug tests fit within the broader context of Dura’s policies. First, the majority reads “designed” too narrowly, focusing on Dura’s implementation of the drug-testing protocol to the exclusion of other relevant evidence. According to the majority, because FFS reported only employees’ machine-restricted medications to Dura, a reasonable jury could conclude that Dura designed its protocols to avoid obtaining information about employees’ underlying medical conditions. But as we emphasized in Kroll v. White Lake Ambulance Authority, an employer’s purpose in using a particular test must be considered in its “larger factual context.” 691 F.3d 809, 816 (6th Cir.2012). In this case, that larger factual context includes how Dura used the test results.
This brings me to my second point of disagreement. Irrespective of whether the tests were initially designed to seek out information regarding employees’ health conditions, when the tests are considered alongside Dura’s blanket-firing policy, a reasonable jury could conclude only that they were designed to detect an employee’s health condition in order to *585 carry out the unlawful purpose of the blanket firings. Indeed, if, as Dura claims, the protocol was designed only to disclose machine-restricted medications for safety purposes, then Dura had absolutely no reason to disregard any of plaintiffs’ doctors who ensured Dura that the employees could perform their jobs safely notwithstanding their use of machine-restricted medications. This leads to the inescapable conclusion that Dura’s drug tests, far from being designed to ferret out employees who could not safely operate machinery, were actually designed to reveal impairments in physical or mental health.
At bottom, the majority concludes that § 12112(d)(4)(A) only prohibits the use of tests that reveal an employee’s specific impairment. Because Dura’s drug-testing protocols did not disclose which precise impairments its employees had, only that they had impairments, the majority reasons that its conduct was lawful. But nothing in the statute, the EEOC’s guidance, or our case law counsels so narrow an interpretation. Congress prohibited medical examinations unless job related and justified by a business necessity. See EEOC v. Prevo’s Family Mkt., Inc., 135 F.3d 1089, 1094 (6th Cir.1998) (“[T]he statute was intended to prevent against ‘medical tests and inquiries that do not serve a legitimate business purpose.’ ” (quoting 29 C.F.R. § 1630.13(b))). There is no business justification for an employer to inquire into whether its employees are impaired if the employer is going to disregard the nature and limitations of that impairment. I would hold that § 12112(d)(4)(A) proscribes inquiries designed to determine whether an employee is impaired, just as it proscribes inquiries designed to determine an employee’s specific impairment.
One final point is in order. I do not read Kroll as elevating one factor in importance over the others or as pronouncing a general rule favoring jury conclusions on the issue of whether a test is designed to reveal an impairment of physical or mental health. Even accepting the majority’s assessment of the third factor, the district court did not err in granting judgment as a matter of law. Here four factors weigh in favor of the district court’s decision, two factors are inconclusive, and only one factor, the third, is disputed. To hold that this dispute precludes judgment as a matter of law is to hold that the third factor alone is dispositive. It is not.
Accordingly, I would affirm the district court’s grant of judgment as a matter of law.